Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JOSÉ EDUARDO DE LA CRUZ SKERRET, y su esposa, EILEEN RIVERA VÉLEZ<br><br>Apelantes<br><br>v.<br><br>JOSÉ A. BERMÚDEZ SEGARRA por sí y en representación de su hijo menor de edad, JORGE LUIS BERMÚDEZ LANDA; JOSÉ ANTONIO BERMÚDEZ LANDA; PAULINA MARÍA BERMÚDEZ LANDA<br><br>Apelados | KLAN202300500 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre: Petición de Interdicto Preliminar y Permanente<br><br>Caso Núm. SJ2022CV04680 (603) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

Comparecen el *Lcdo. José De La Cruz Skerrett* y su esposa *Eileen Rivera Vélez* (parte apelante–demandante) para que revisemos la *Sentencia Parcial Enmendada* dictada el 1 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI),[1] en la que acogió la *Moción Solicitando Enmiendas a determinación de Hechos Número 11 y otras*. Además, declaró *Ha Lugar* la *Oposición a Solicitud de Sentencia Sumaria* presentada por el *Dr. José Antonio Bermúdez Segarra*, por sí y en representación de su hijo menor de edad, y otros (parte apelada–demandado).

Considerado los escritos de las partes, **confirmamos** la *Sentencia Parcial Enmendada* recurrida. Veamos.

---

[1] Notificada el 2 de junio de 2023.

Número Identificador

SEN2023 _____

## -I-

Surge del expediente que el Dr. José Antonio Bermúdez Segarra (Dr. Bermúdez Segarra) y esposa María Julia Landa Velasco (Landa Velasco) adquirieron la residencia sita en la calle 19 Níspero (o Naranjo) K-2 de la Urbanización Laderas de San Juan, ubicada en el Barrio Caimito de San Juan, por la suma de $385,427.00. Sobre esta propiedad, el Dr. Bermúdez Segarra y la señora Landa Velasco constituyeron una hipoteca.[2]

Luego del fallecimiento de la señora Landa Velasco, el Dr. Bermúdez Segarra junto el Lcdo. José De La Cruz Skerrett (Lcdo. De La Cruz) suscribieron el **7 de diciembre de 2017**, un contrato titulado *Cesión de Uso y Aprovechamiento de Propiedad Inmueble* (Contrato de Cesión). Dicho contrato fue sobre la residencia sita en la Urbanización Laderas de San Juan, por lo que establecieron una serie de términos y condiciones;[3] a saber:

### *TÉRMINOS Y CONDICIONES*

*PRIMERA: Las partes se reafirman y hacen suyas las consideraciones que les conducen a ambos el suscribir el presente acuerdo.*

*SEGUNDA: El Cesionario entrará a poseer el inmueble antes descrito una vez este acuerdo sea debidamente otorgado con la firma de ambas partes, y sus iniciales en cada folio, comprometiéndose el Cesionario desde ese momento con el Concedente, a preservarlo y mantenerlo como un buen padre de familia, y a no modificarlo en forma alguna que lo desmerezca o lo afecte en su estructura o la buena apariencia que este exhibe al momento de entrar a ocuparlo.*

*TERCERA: El Cesionario recibe la propiedad en la forma y manera en que esta se encuentra al momento de otorgarse este contrato, acordándose, además, y de manera específica entre el Cesionista y el Cesionario lo siguiente: (1) El Cesionario limpiará y podará, árboles, palmas, y arbustos, y eliminará toda vegetación y accesorios de jardín que no responda a su gusto y preferencia; (2) el Cesionista corregirá un área de empañetado visible en la parte superior de la estructura que arrancó los vientos el huracán María; (3) el Cesionista removerá y se llevará consigo del solar, una mesa de billar, sus accesorios, y un canasto de baloncesto; (4) el Cesionista entregará en estado operativo y funcional todos los equipos mecánicos que proveen enfriamiento y climatización a las dependencias interiores de la estructura, y a partir de la inspección que así lo certifique, será responsabilidad del Cesionario la prospectiva conservación, reemplazo cuando la*

---

[2] Apéndice de la *Apelación*, págs. 96 – 97.
[3] Apéndice de la *Apelación*, págs. 85 – 89.

*requiriese, y el mantenimiento de tales equipos mecánicos; (5) el Cesionista entregará el generador eléctrico de 15 KV ubicado en la azotea de la estructura operando y funcionando según las especificaciones del fabricante, y a partir de esa fecha, será responsabilidad del Cesionario la prospectiva conservación, reemplazo cuando lo requiriese, y el mantenimiento del indicado generador; (6) el Cesionista entregara el servicio de agua potable y alcantarillado operando y funcionando para su provecho inmediato en todos los accesorios que llevan agua en la residencia, y prospectivamente será responsabilidad del Cesionario la prospectiva conservación, reemplazo cuando lo requiriese, y el mantenimiento del indicado sistema de agua potable y alcantarillado; (7) el Cesionista entregará el servicio eléctrico de la residencia funcionado, lo que se comprobará a través del generador eléctrico de 15 KV en la eventualidad que aún la AEE no proveyera este servicio a la residencia, y prospectivamente será responsabilidad del Cesionario la conservación, reemplazo cuando lo requiriese, y el mantenimiento del sistema eléctrico [;] (8) El Cesionario proveerá el color, marca y la calidad de la pintura de su preferencia para aplicarla el exterior de la residencia, y el Cesionista proveerá y pagará por la mano de obra a través de un contratista de su selección para este aplicar la pintura suministrada por el Cesionario. La pintura en el interior de la residencia le corresponderá al Cesionario en su totalidad sin aportación alguna del Cesionista.*

*CUARTA: El Cesionista será responsable de haber realizado todo pago que le requiera el acreedor hipotecario BPPR al 31 de diciembre de 2017, para satisfacer el principal, interés, penalidades, recargos, seguros y contribución territorial basado en los términos y condiciones de la hipoteca. Por su parte, el Cesionario asumirá esa obligación a partir del 1 de enero de 2018 hasta la suma de $2,700. Cualquier suma que se requiera pagar al BPPR en los conceptos antes indicados que exceda la suma de $2,700, será responsabilidad del Cesionista reembolsarlo al Cesionario hasta al menos el 31 de julio de 2018, siempre que el Cesionista haya completado la inscripción del título por herencia testada de sus hijos, y consecuentemente se tenga un título perfectamente transferible. El pago mensual de la hipoteca por su total importe que venzan a partir del 1 de enero de 2018 las hará directamente el Cesionario al BPPR siempre que se cumpla la condición que se dirá, y el Cesionario enviará al Cesionista constancia auténtica del pago realizado.*

*QUINTA: El Cesionista pagará a la asociación de propietarios de la urbanización Laderas de San Juan, la cuota mensual y las derramas que haya impuesto la asociación a la propiedad objeto de este contrato, para el mantenimiento de las áreas comunes, el control de acceso y la seguridad, o en cualquier otro concepto que impongan sus reglamentos, hasta el 31 de julio de 2018. A partir del 1 de agosto de 2018, esta responsabilidad de pago la asumirá el Cesionario si aún a esa fecha no se hubiera perfeccionado la compraventa de la propiedad por otras razones que no sean atribuibles a la perfección del título que le corresponde realizar al Cesionista para hacer viable la transmisión del indicado título, quedando así por siempre liberado el Cesionista de tal pago, así como de las derramas impuestas a partir de la indicada fecha.*

*SEXTA: Durante los seis meses siguientes a este contrato, el Cesionario hará esfuerzos continuos y razonables para que no más tarde del 31 de julio de 2018, se logre perfeccionar la compraventa del inmueble y quede de esa forma liberado el*

*Concedente de sus obligaciones como deudor hipotecario del inmueble. Si alcanzada la fecha del 31 de julio de 2018 aun la compraventa no ha quedado completada por otras razones que no sean atribuibles a la perfección del título que le corresponde realizar al Cesionista para hacer viable la transmisión del indicado título, el Cesionario asume la total obligación de pagar el importe de la mensualidad hipotecaria al BPPR a su fecha de vencimiento, la que incluye principal, interés, recargos, penalidades, seguros y contribución territorial, y además, pagará el importe total de la cuota y derramas impuestas por la asociación de residentes de Laderas de San Juan, cuya realización de pagos validará el Cesionario haberlos hecho al Cesionista.*

**SÉPTIMA:** *Basado en el comportamiento de los mercados de venta de inmobiliarios, y particularmente lo relativo a la multiplicidad de residencias abandonadas y/o ejecutadas y/o puestas a la venta en la comunidad de Laderas de San Juan, ambas partes son de la opinión que la deuda hiptecaria que actualmente grava esta propiedad con el BPPR deberá exceder su valor de mercado, por lo que, tan pronto el Cesionario quede cualificado preliminarmente para financiar la compra del inmueble mediante un préstamo FHA, lo que le aventaja por ser de un interés y pronto pago menor, se negociará con el acreedor hipotecario BPPR, una venta tipo Short Sale y se procedería con el cierre de la compraventa correspondiente una vez alcanzado un acuerdo de buena fe con BPPR, comprometiéndose el Cesionario perseguir con prontitud y diligencia. El Cesionista no se compromete, sin embargo, con el Cesionario, y por tanto no asume ninguna obligación al respecto, sobre el éxito que pueda o no resultar de esta gestión del Short Sale, más de buena fe ayudará en la medida que pueda ser necesaria y efectiva su asistencia.*

**OCTAVA:** *Por tener tres menores de edad, hijos del Cesionista, una participación en común por indiviso en la descrita propiedad por ser herederos forzosos de su señora madre fallecida, se requerirá del Tribunal Superior de San Juan una autorización judicial con la intervención de la Oficina del Procurador de Menores, para que se permita el traspaso del título de la propiedad mediante el negocio jurídico que hubiera sido finalmente negociado entre el Cesionario y el acreedor hipotecario BPPR. El indicado negocio jurídico no contempla que el Cesionista, ni sus hijos menores, reciban suma alguna de dinero, sino meramente haber quedado liberados desde el 1 de enero de 2018 realizar los pagos hipotecarios mensuales sobre esta propiedad, lo que ha representado una carga altamente onerosa e insostenible para el Cesionista, como también para sus tres hijos menores, quienes carecen de recurso alguno para hacer tal pago hipotecario en proporción a su interés común pro indiviso en la propiedad. En el altamente improbable escenario que el tribunal denegara la autorización de la venta por el precio acordado con el BPPR y financiado por el nuevo acreedor hipotecario, el Cesionario quedaría entonces liberado de sus obligaciones aquí contraídas y desocuparía el inmueble para darle al Cesionista la total libertad de optar por lo que mejor convenga a sus intereses y aquel de sus hijos menores que representa y sobre los cuales ejerce única patria potestad y custodia. En tal caso, o sea, si el Cesionario optara por desocupar el inmueble, no tendrá derecho alguno a recuperar del Cesionista cualquier desembolso que hubiera realizado, bien por mejoras o limpieza de la propiedad o por pagos aportados al préstamo hipotecario con el BPPR.*

*NOVENA: Tal es el acuerdo que alcanzan las partes luego de haberlo discutido entre estos de una forma pormenorizada y consultados con los asesores legales de su propia selección y confianza.*

*DÉCIMA: Este acuerdo, manifiestan las partes contiene la totalidad de los acuerdos alcanzados y nada fuera de lo aquí dispuesto les obliga de una manera distinta a lo pactado, requiriéndose de un acuerdo escrito y con las demás formalidades del presente para variar cualquiera de sus términos.[4]*

Tiempo después, el **31 de mayo de 2022**, la parte apelante presentó una *Petición de Interdicto Preliminar y Permanente* contra el Dr. Bermúdez Segarra, por sí y en representación de su hijo menor de edad J.L.M.L., y los hermanos José Antonio Bermúdez Landa y Paulina María Bermúdez Landa.[5] Adujo que el Contrato de Cesión se otorgó con la intención de completar la compraventa del inmueble, por lo que dicho contrato no tiene cláusula que exprese la intención del Dr. Bermúdez Segarra en retener el dominio del inmueble, y que la obligación del Lcdo. De La Cruz fue liberar al deudor de su obligación. Además, la parte apelante alegó que el Lcdo. De La Cruz había ejercido la posesión y dominio de la propiedad con el interés de adquirir la aludida propiedad. Añadió que desde enero de 2018 hasta mayo de 2022, se había pagado puntualmente 53 pagos hipotecarios y 47 cuotas de la asociación de residentes. Ante el alegado incumplimiento de la parte apelada con lo acordado, solicitó al TPI que ordenara a dicha parte suscribir y otorgar cualquiera de los documentos que fueran requeridos para efectuar la transferencia registral del inmueble.

No obstante, el **31 de mayo de 2022** el TPI expresó:

*PARTE DEMANDANTE MUESTRE CAUSA POR LA CUAL NO DEBAMOS DICTAR SENTENCIA PARCIAL DESESTIMANDO LAS ACCIONES INTERDICTALES EN VISTA DE LA AUSENCIA DE DAÑOS IRREPARABLES. EL PRINCIPIO MEDULAR QUE RIGE LA CONCESIÓN DE ESTE REMEDIO EXTRAORDINARIO ES LA EXISTENCIA DE UNA AMENAZA REAL DE SUFRIR ALGÚN DAÑO PARA EL CUAL NO SE TIENE UN REMEDIO ADECUADO EN LEY. EN OTRAS PALABRAS, EL DAÑO*

---

[4] Apéndice de la *Apelación*, págs. 87 – 89.
[5] El Sr. José Antonio Bermúdez Landa y la Srta. Paulina María Bermúdez Landa son miembros de la sucesión de la señora Landa Velasco.; Apéndice de la *Apelación*, págs. 1 – 24.

*IRREPARABLE DEBE SER UNO TAL QUE PROVOQUE EL QUE NO EXISTA OTRO REMEDIO EN LEY. CONFORME LAS ALEGACION[E]S DE LA DEMANDA; TOMÁNDOSE COMO CIERTAS, EL CASO DE AUTOS TRATA SOBRE EL INCUMPLIMIENTO DE CONTRATO Y LOS DAÑOS Y PERJUICIOS, A CONSECUENCIA DE DICHO INCUMPLIMIENTO. LOS DEMANDANTES TIENEN REMEDIOS LEGALES DISPONIBLES A TRAVÉS DE DICHAS CAUSAS DE ACCIÓN EN EL PROCEDIMIENTO ORDINARIO PARA ATENDER SUS RECLAMOS.[6]*

En cumplimiento de orden, la parte apelante presentó su escrito el **2 de junio de 2022**.[7] Reiteró los planteamientos presentados en la solicitud interdictal y alegó que no tenían otro proceso para atender con urgencia la petición de formalizar la transferencia de título a su nombre.

Así, el **6 de junio de 2022** TPI emitió una Sentencia Parcial en la que determinó que no era procedente la concesión del remedio interdictal, ya que mediante el procedimiento ordinario podía atender su reclamación.[8]

Entonces, en el proceso ordinario la parte apelante presentó una *Solicitud de Sentencia Sumaria* el **6 de julio de 2022**.[9] Esbozó trece (13) hechos materiales que, según su percepción, no estaban en controversia. Para sustentar su solicitud, sometió como evidencia los siguientes documentos: *Contrato de Cesión,*[10] Estudio de Título de la Propiedad,[11] Sentencia de Autorización Judicial,[12] Declaración Jurada del Lcdo. De La Cruz,[13] Carta de Precalificación de *Fembi Mortgage* (con fecha del 8 de abril de 2022),[14] y comunicaciones entre los representantes legales de las partes.[15]

En síntesis, alegó, que el objetivo del *Contrato de Cesión* era transferir por compraventa el dominio del inmueble, lo cual estaba

---

[6] Apéndice de la *Apelación*, pág. 25.
[7] *Id.*, en las págs. 26 -31.
[8] *Id.*, en las págs. 50 – 54.
[9] *Id.*, en las págs. 70 – 133.
[10] *Id.*, en las págs. 85 – 89.
[11] *Id.*, en las págs. 90 – 95.
[12] *Id.*, en las págs. 96 – 97.
[13] *Id.*, en las págs. 80 – 84.
[14] *Id.*, en la pág. 98.
[15] *Id.*, en las págs. 99 – 133.

siendo incumplido por la parte contraria. Adujo que no había cláusula que expresara la intención del Dr. Bermúdez Segarra en retener el inmueble, como tampoco había otra obligación que no fuera liberar al deudor. Argumentó, además, que el *Contrato de Cesión* estableció todos los requisitos necesarios para validar una compraventa, y señaló, que no se otorgó un contrato con fecha posterior. En consecuencia, solicitó el cumplimiento del Contrato de Cesión, conforme al texto, y se ordenara la firma de los documentos necesarios para la transmisión del inmueble.

Luego de una prórroga concedida por el TPI, el **12 de agosto de 2022**, la parte apelada presentó su escrito intitulado: *OPOSICIÓN A MOCIÓN DE SENTENCIA SUMARIA PRESENTADA POR LA PARTE DEMANDANTE Y SOLICITUD DE SENTENCIA SUMARIA A FAVOR DE LA PARTE DEMANDADA.*[16] En síntesis, aceptó que las partes habían suscrito un contrato de cesión de uso, pero no de compraventa. Mencionó que el Lcdo. De La Cruz tenía que cualificar para poder efectuar la transacción, en o antes del 31 de julio de 2018,[17] sin embargo, éste no tenía capacidad económica ni capacidad para obtener financiamiento.[18] Señaló, que ante esta situación se le permitió —a la parte apelante— poseer la propiedad en calidad de arrendatario,[19] pero en ningún momento como propietarios ni dueños. Señaló que el arrendamiento fue hasta diciembre 2021, ya que la parte apelante regresó a su residencia principal; y, pese a ser solicitado, no han entregado las llaves de la propiedad. Todavía más, entre finales de 2021 o principios de 2022 ambas partes llegaron a un nuevo acuerdo, en el cual pactaron vender el inmueble y el sobrante neto dividirlo en partes iguales.[20] Indicó, que ante la

---

[16] *Id.*, en las págs. 146 – 205.
[17] *Id.*, en las págs. 166 – 170.
[18] *Id.*, en las págs. 171 – 172.
[19] *Id.*, en la pág. 172.
[20] Apéndice de la *Apelación*, en las págs. 173 – 174. Sobre este acuerdo, la parte menciona que la siguiente prueba documental recoge el mismo y la intención de las partes:

incompatibilidad del contrato suscrito el 7 de diciembre de 2017 con la nueva obligación, ocurrió una novación. Señaló que, el 17 de febrero de 2022 el Lcdo. De La Cruz retiró su consentimiento.[21] En ese sentido, la parte apelante incumplió, tanto con el Contrato de Cesión, como con el segundo acuerdo. Negó que los pagos se realizaran de manera puntual, y añadió, que ha tenido que cumplir con el pago de la hipoteca ante el incumplimiento del Lcdo. De La Cruz con el segundo contrato.[22] Solicitó se dictara sentencia sumaria a su favor y presentó veintisiete (27) hechos omitidos por la parte apelante como hechos sobre los que no hay controversia. Reiteró, que el contrato era de cesión de uso y aprovechamiento de la propiedad, y que no se perfeccionó una compraventa. Añadió, que el contrato obligaba al Lcdo. De La Cruz a realizar ciertas gestiones para poder adquirir mediante compraventa la propiedad, por lo que, señaló que era una obligación condicionada a que éste obtuviera un financiamiento. En consecuencia, solicitó que se decretara el incumplimiento con ambos contratos, y se ordenara a la parte apelante la entrega de las llaves a los dueños.

El **31 de agosto de 2022**, la parte apelante compareció en oposición a la solicitud de sentencia sumaria en favor de los apelados.[23] En suma, aceptó parcialmente las alegaciones de la parte contraria, y otras la negó. Adujo que la parte apelada es la que

---

(1) Correo electrónico de De la Cruz, 24 de enero de 2022 (*Véase*, Apéndice de la *Apelación*, pág. 173).
(2) Acuerdo de Distribución de Fondos de 22 de enero de 2022, firmado por De la Cruz (*Véase*, Apéndice de la *Apelación*, pág. 174).
(3) Carta de De la Cruz a Rafael Torres, 27 de enero de 2022 (*Véase*, Apéndice de la *Apelación*, pág. 175).
(4) Contrato de Opción de Compraventa, firmado por Dr. Bermúdez (*Véase*, Apéndice de la *Apelación*, págs. 176 – 183).
(5) Carta del abogado de De la Cruz, 27 de enero de 2022 (*Véase*, Apéndice de la *Apelación*, págs. 184 – 187).
(6) Carta del abogado del Dr. Bermúdez, 31 de enero de 2022 (Apéndice de la *Apelación*, págs. 188 – 189).
(7) Carta del abogado de De la Cruz, 31 de enero de 2022 (*Véase*, Apéndice de la *Apelación*, págs. 190 – 191).
Carta del abogado del Dr. Bermúdez, 8 de febrero de 2022 (*Véase*, Apéndice de la *Apelación*, págs. 192 – 193).
[21] Anejo de la *Apelación*, pág. 194.
[22] *Id.*, en las págs. 198 – 205.
[23] *Id.*, en la págs. 198 – 205.

sigue obstruyendo la liberación hipotecaria acordada. Señaló, además, que el Contrato de Cesión es el único acuerdo vigente, y que este no se alteró. Arguyó, que los pagos de la hipoteca se han realizado puntualmente.

El **4 de octubre de 2022**, el TPI dio por sometidas las solicitudes de sentencia sumaria de ambas partes. Por lo cual, notificó el **16 de mayo de 2023** una *Sentencia Parcial*.[24] Allí, esbozó las siguientes determinaciones de hechos:

> *1. El 7 de diciembre de 2017 De La Cruz y Bermúdez Serra suscribieron un contrato titulado Cesión de uso y aprovechamiento de propiedad inmueble. [sic].*
>
> *2. El bien inmueble objeto del contrato titulado Cesión de uso y aprovechamiento de propiedad inmueble ubica en La calle Naranjo 19 de la Urb. Laderas de San Juan, en el municipio de San Juan, Puerto Rico. [sic].*
>
> *3. La descripción registral de la propiedad inmueble es la siguiente:*
> *URBANA: Lote "K" guión dos (K-2) de la Urbanización LADERAS DE SAN JUAN, localizada en el Barrio Caimito del término municipal de San Juan, con una cabida de DOS MIL CUATROCIENTOS CINCO PUNTO MIL TREINTA Y DOS METROS CUADRADOS (2,405.1032 m/c). En lindes por el NORTE, en una sola alineación de ochenta punto doscientos ochenta y cinco (80.285) metros, con el Lote "K" guión tres (K-3) de la Urbanización Laderas de San Juan; por el sur, en una sola alineación de sesenta y nueve punto ochenta y siete (69.87) metros con el lote "K" guión uno (K-1) de la Urbanización Laderas de San Juan; por el ESTE, en varias alineaciones, una de veintiuno punto doscientos ocho (21.208) metros y en otra alineación de diez punto ciento cuarenta y cinco, con Quebrada Arenas; y por el OESTE, en varias alineaciones, una de veinticuatro punto quinientos (24.500) metros y otras alineación de nueve punto ciento noventa y dos (9.192) metros, con la calle número cuatro (4) Este de la Urbanización Laderas de San Juan.*
>
> *Enclava edificación de un nivel residencial de forma irregular, Entrada principal mirando hacia el Oeste que colinda con la calle número Este de la Urbanización Laderas de San Juan. Tiene sal, comedor, cocina, family room, patio interior, cuatro (4) cuartos, dos baños y medio, walk-in closet, área de laundry, marquesina doble y patio.*
>
> *Se encuentra gravada por primera y única hipoteca en la suma de $463,500.00, a favor del Banco Popular de Puerto Rico, otorgada mediante escritura número 130 el 30 de mayo de 2009, ante el Notario Público Frederick James Baraga Huyke, cuyo balance se encuentra hoy reducido a una suma aproximada de $396,000.00. [sic].*
>
> *4. La cuarta cláusula de los términos y condiciones del*

---

[24] *Id.*, en la págs. 356 – 371.

*contrato titulado Cesión de uso y aprovechamiento dispone lo siguiente:*

*CUARTA: El Cesionista será responsable de haber realizado todo pago que le requiera el acreedor hipotecario BPPR al 31 de diciembre de 2017, para satisfacer el principal, el interés, penalidades, recargos, seguros y contribución territorial basado en los términos y condiciones de la hipoteca. Por su parte el Cesionario asumirá esa obligación a partir del 1 de enero de 2018 hasta la suma de $2,700. Cualquier suma que se requiera pagar al BPPR en los conceptos antes indicados que exceda la suma de $2,700, será responsabilidad del Cesionista reembolsarlo al Cesionario hasta al menos el 31 de julio de 2018, siempre que el Cesionista haya completado la inscripción del título por herencia testada de sus hijos, y consecuentemente se tenga un título perfectamente transferible. El pago mensual de su hipoteca por su total importe que venzan a partir del 1 de enero de 2018 las hará directamente el Cesionario al BPPR siempre que se cumpla con la condición que se dirá, y el Cesionario enviará al Cesionista constancia auténtica del pago realizado. [sic].*

**5. La sexta cláusula de los términos y condiciones del contrato titulado Cesión de uso y aprovechamiento dispone lo siguiente:**

**SEXTA: Durante los seis meses siguientes a este contrato, el Cesionario hará esfuerzos continuos y razonables para que no más tarde del 31 de julio de 2018, se logre perfeccionar la compraventa del inmueble y quede de esa forma liberado el Concedente de sus obligaciones como deudor hipotecario del inmueble. Si alcanzada la fecha del 31 de julio de 2018 aun la compraventa no ha quedado completada por otras razones que no sean atribuibles a la perfección del título que le corresponde realizar al Cesionista para hacer viable la transmisión del indicado título, el Cesionario asume la total obligación de pagar el importe de la mensualidad hipotecaria al BPPR as u fecha de vencimiento, la que incluye principal, interés, recargos, penalidades, seguros y contribución territorial, y además, pagará el importe total de la cuota y derramas impuestas por la asociación de residentes de Laderas de San Juan, cuya realización de pagos validará el Cesionario haberlos hecho al Cesionista. [sic].**

**6. El 19 de febrero de 2019, la institución bancaria Popular Mortgage envió una notificación a De La Cruz denegando su solicitud de crédito. [sic].**

7. El 8 de abril de 2022, Fembi Mortgage envió una carta a De La Cruz notificándole que había sido precualificado para un préstamo hipotecario por la cantidad de $280,000.00, basado en un precio de compra de $350,000.00. [sic].

**8. El 22 de enero de 2022, De La Cruz y Bermúdez Segarra firmaron un documento titulado Acuerdo de distribución de fondos. En este, ambos acordaron dividir en partes iguales el producto neto que resultara de la venta de la residencia ubicada en la Urb. Laderas de San Juan. [sic].**

9. El 25 de enero de 2022, Bermúdez Segarra y la sucesión de María Julia Landa Velasco por medio de su representación

*legal enviaron una carta a De La Cruz en la que le indicaban que el acuerdo de distribución de fondos acordado consideraba la división por partes iguales del sobrante neto que resultase de la compraventa del bien inmueble ubicado en la Urb. Laderas de San Juan. Además, la misiva expresaba que Bermúdez Segarra continuaría ejerciendo su derecho propietario sobre dicha residencia hasta su enajenación. [sic].*

*10. El 27 de enero de 2022, De La Cruz envió una carta dirigida a Rafael Torres, el tercero interesado en adquirir la residencia, propiedad de Bermúdez Segarra y la Sucesión de María Julia Landa Velasco. En esta carta De La Cruz manifestó: que Bermúdez Segarra por sí y en representación de sus tres hijos habían acordado dividir en partes iguales el producto neto resultado de la compraventa. Igualmente, le indicó a Rafael Torres que debía emitir el pago en dos instrumentos bancarios separados: uno a nombre de Bermúdez Segarra y sus hijos y otro a nombre de los esposos De La Cruz-Rivera. [sic].*

*11. Los esposos De La Cruz-Rivera tuvieron la posesión de la casa que ubica en la Urb. Laderas de San Juan hasta enero de 2021. [sic].*

***12. El 27 de enero de 2022, De La Cruz por medio de su representación legal envió una carta dirigida al Lcdo. Hugo Rodríguez Díaz, en la que rechaza que el contrato de Cesión de uso y aprovechamiento de bien inmueble se trate de un arrendamiento. A su vez expone que aceptó la división del producto neto de la compraventa por partes iguales. [sic].***

*13. El 17 de febrero de 2022, De La Cruz envió una carta a Bermúdez Segarra en la que retiraba el ofrecimiento de compartir el 50% del producto neto de la venta del bien inmueble. [sic].*

*14. El 26 de febrero de 2022 Bermúdez Segarra por sí y sus hijos suscribieron un contrato titulado Contrato de opción de compra con Rafel Torres y Kennida Margarita Fernández. Este contrato establecía $700,000.00 como precio de venta de la residencia ubicada en la Urb. Laderas de San Juan y que es Propiedad de Bermúdez Segarra y de sus hijos.*

*15. El 31 de marzo de 2022, el Lcdo. Hugo Rodríguez Díaz, envió una carta a De La Cruz, solicitando su desalojo y entrega de las llaves de la residencia que ubica en Urb. Laderas de San Juan. [sic].*[25]

Basado en las determinaciones de hechos antes expuestas, el TPI declaró *Ha Lugar* la *Oposición a moción de sentencia sumaria […]*, presentada por la parte apelada.[26] En lo pertinente, expresó:

*[E]n este caso las partes suscribieron un contrato titulado Cesión de uso y aprovechamiento de bien inmueble. Este contrato establecía los términos y condiciones necesarios para que eventualmente se perfeccionara una compraventa. La condición principal era que los esposos De La Cruz-Rivera obtuvieran un financiamiento para poder comprar la casa, liberando a Bermúdez Segarra y a sus hijos de la hipoteca. Por lo que, al examinar el contrato de las partes no cabe duda*

---

[25] *Id.*, en las págs. 359 – 363.
[26] *Id.*, en las págs. 370 – 371.

*de que el negocio jurídico ante el que nos encontramos en ese contrato se trata de una promesa bilateral de compraventa.*

*[ . . . .]*

*[E]n el caso de autos, se estableció como condición para la compraventa que los esposos De La Cruz-Rivera debían obtener el financiamiento que permitiera saldar el préstamo hipotecario que grava la propiedad en referencia. Por lo tanto, hasta tanto no se perfeccionara la compraventa, Bermúdez Segarra y sus hijos, mantendrían la propiedad de la casa que ubica en Urb. Laderas de San Juan. Por esta razón no podemos concluir que se perfeccionó un contrato de compraventa que transmitiera el dominio de la propiedad o que, otorgara a De La Cruz-Rivera un derecho real sobre esta casa. De este contrato solo surgieron obligaciones personales de los contratantes, pues para todos los efectos reales Bermúdez Segarra y sus hijos mantuvieron su título como propietarios, cuya obligación de vender surgiría cuando los esposos De La Cruz-Rivera cumplieran con su deber de obtener el debido financiamiento.*

*Así las cosas, antes de que, los esposos De La Cruz-Rivera, obtuvieran el financiamiento, las partes pactaron otro acuerdo para la venta de la residencia propiedad de Bermúdez Segarra y sus hijos. En este, se acordó la división por partes iguales del producto neto de la compraventa de esta residencia. De hecho, las partes firmaron un acuerdo de división de fondos y así lo manifestó De La Cruz en sus misivas dirigidas a Rafael Torres. Sin embargo, el 27 de enero de 2022, De La Cruz envió una misiva a Bermúdez Segarra informando que retiraba su aceptación al acuerdo de división de fondos por partes iguales. Posteriormente, indicó que deseaba se honrara el contrato originalmente otorgado, Cesión de uso y aprovechamiento de bien inmueble, y que la parte demandada cumpliera con los trámites necesarios para la perfección de la compraventa tal como se pactó en un inicio.*

*Para determinar si en efecto Bermúdez Segarra y sus hijos están obligados a perfeccionar la compraventa, es necesario examinar si el acuerdo de división de fondos producto de la venta de la casa constituyó una novación. […]*

*En el caso que nos compete, De La Cruz y Bermúdez Segarra acordaron vender la casa a un tercero y dividir las ganancias netas producto de esa compraventa. Este negocio jurídico es completamente incompatible con el anterior, por lo que se configuró una novación extintiva que dejó sin efecto el contrato titulado Cesión de uso y aprovechamiento de bien inmueble. Por lo tanto, no procede reclamar el cumplimiento de la promesa bilateral de compraventa, toda vez que esa obligación quedó extinguida por una novación producto de la voluntad de los contratantes. Ante este escenario jurídico, nos vemos obligados a concluir que procede la desestimación de la Demanda presentada por De La Cruz-Rivera. [ . . . ].*[27]

El **31 de mayo de 2023**, la parte apelada presentó *Moción Solicitando Enmiendas a Determinación de Hechos Número 11 y otras.*[28] Solicitó: **(1)** enmienda a la Determinación de Hecho número 11; **(2)** enmienda a la última oración de las Conclusiones de Derecho; y **(3)** enmienda al dictamen de instancia.

---

[27] *Id.*, en las págs. 368 – 370.
[28] *Id.*, en las págs. 372 – 374.

El **2 de junio de 2023**, el TPI emitió una *Sentencia Parcial Enmendada*,[29] en las que hizo las siguientes enmiendas:

- Se modificó la Determinación de Hechos Número 11:

    *11. Los esposos De La Cruz-Rivera tuvieron la posesión de la casa que ubica en la Urb. Laderas de San Juan hasta enero de 2021, **pero no han entregado las llaves de la propiedad de la Urbanización Laderas de San Juan**.*[30]

- Se modificó la última oración de las Conclusiones de Derecho:

    *En cuanto a las alegaciones expuestas en la reconvención sobre temeridad e interferencia torticera de contrato, al momento este tribunal no se encuentra en posición para resolver estas controversias. **Además, cabe señalar que, los esposos De La Cruz-Rivera, ya no están en posesión de la residencia ubicada en Urb. Laderas de San Juan, pero se han negado a entregar las llaves, por lo que se declara Ha Lugar la acción de desahucio de la Reconvención**.*[31]

- Se modificó la Parte IV titulada *Sentencia Parcial*:

    *Por los fundamentos antes expuestos, se declara HA LUGAR la Oposición a moción de sentencia sumaria […], presentada el 12 de agosto de 2022 por José Antonio Bermúdez Segarra, por sí en representación del menor JLBL, José Antonio Bermúdez Landa y Paulina María Bermúdez Landa, en cuanto a que procede la desestimación de la Demanda presentada el 5 de julio de 2022 por José Eduardo De La Cruz Skerrett y su esposa Eileen Rivera Vélez **y se les ordena hagan entrega de las llaves de la residencia de la Urb. Laderas de San Juan a la parte demandada**.*[32]

El **8 de junio de 2023**, el *Lcdo. José De La Cruz Skerrett* y su esposa *Eileen Rivera Vélez* recurren ante este foro intermedio mediante recurso de apelación y señalaron los siguientes de cuatro (4) errores:

> **PRIMER SEÑALAMIENTO DE ERROR:** *ERRÓ INSTANCIA AL FUNDAMENTAR SUS CONCLUSIONES DE DERECHO EN HECHOS MERIDIANAMENTE ERRADOS Y OTROS INEXISTENTES, CON GRAVE DESPRECIO A LA PRUEBA DOCUMENTAL INCONTROVERTIDA, A SABER: BASAR SU DETERMINACIÓN DESESTIMATORIA EN DOS CONTRATOS QUE NUNCA FUERON SUSCRITOS POR LAS PARTES, Y AUN ASÍ, EL TPI LOS ADOPTA COMO VINCULANTES Y DETERMINANTES EN SU ADJUDICACIÓN DEL DERECHO PARA LAS PARTES EN LITIGIO.*

> **SEGUNDO SEÑALAMIENTO DE ERROR:** *RESOLVER QUE UN CONTRATO FUE SUSCRITO ENTRE LAS PARTES RESULTANDO EN UNA NOVACIÓN QUE EXTINGUIÓ LA*

---

[29] *Id.*, en las págs. 375 – 390.
[30] *Id.*, en la pág. 385.
[31] *Id.*, en la pág. 389.
[32] *Id.*, en las págs. 389 – 390.

*OBLIGACIÓN PRIMITIVA ACORDADA ENTRE LAS PARTES.*

*TERCER SEÑALAMIENTO DE ERROR: ERRÓ INSTANCIA AL INTERPRETAR EL CONTENIDO Y ALCANCE DEL CONTRATO DE CESIÓN DE USO Y APROVECHAMIENTO DE PROPIEDAD INMUEBLE, CONTRATO QUE GOZA DE TEXTO CLARO Y LIBRE DE AMBIGÜEDADES.*

*CUATRO SEÑALAMIENTO DE ERROR: MANIFESTAR UNA SERIA Y PREOCUPANTE PASIÓN, PERJUICIO, Y PARCIALIDAD, CONTRA LA PARTE DEMANDANTE, REACCIONADO MOLESTO ANTE UN MERO SEGUIMIENTO DE LOS APELANTES PARA QUE SE ATENDIERAN LAS MOCIONES DISPOSITIVAS LUEGO DE TRANSCURRIR CASI SIETE (7) MESES DESDE QUE QUEDARAN SOMETIDAS LAS MISMAS, Y ESTAR ANTE UN CASO DE DAÑO ACUMULATIVO POR EL MERO PASAR DEL TIEMPO, DICTANDO APENAS PASADOS ONCE (11) DÍAS DE SU ADVERSA REACCIÓN AL SEGUIMIENTO, UNA SENTENCIA TOTALMENTE DESPRENDIDA Y AJENA A LOS HECHOS MATERIALES INCONTROVERTIDOS DEL CASO, Y EN UNA APLICACIÓN ERRADA DEL DERECHO, Y NO CONFORME CON TODO LO ANTERIOR, DICTAR OTRA SENTENCIA PARCIAL ENMENDANDO LA ANTERIOR SIN DAR OPORTUNIDAD ALGUNA A LA PARTE AQUÍ APELANTE DE PRONUNCIARSE SOBRE LA SOLICITUD DE LA PARTE APELADA QUE DABA LUGAR A LA ENMIENDA DE LA SENTENCIA PARCIAL.*

El **31 de julio de 2023**, Dr. José Antonio Bermúdez Segarra, por sí y en representación de su hijo menor de edad J.L.M.L., el Sr. José Antonio Bermúdez Landa y la Srta. Paulina María Bermúdez Landa comparecieron mediante el escrito *Oposición a la Apelación.*

Habiendo comparecido las partes, damos por sometido el asunto.

**-II-**

Examinado el tracto procesal, pasemos ahora a exponer el derecho aplicable.

**-A-**

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[33] A tal efecto, la Regla 36 de las de Procedimiento Civil dispone el proceso

---

[33] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).

mediante el cual cualquiera de las partes puede solicitar al tribunal que dicte sentencia sumaria a su favor.[34] De esta forma, cuando cualquier parte le solicite al tribunal que el pleito sea resuelto por la vía sumaria, deberá demostrar en su solicitud, *"la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*[35]

Los hechos esenciales y pertinentes a los que se refieren las Reglas de Procedimiento Civil son los que se conocen como *"hechos materiales".*[36] Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario.[37]

Ahora bien, la Regla 36.3 de Procedimiento Civil, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor.[38] A esos efectos, la mencionada regla establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba

---

[34] *Reglas de Procedimiento Civil* 2009, 32 LPRA Ap. V., R. 36.
[35] 32 LPRA Ap. V., R. 36.1 y 36.2.
[36] *Id.*
[37] 32 LPRA Ap. V., R. 36.1.; *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).
[38] 32 LPRA Ap. V, R. 36.3.

admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y (6) el remedio que debe ser concedido.[39]

Presentada una solicitud de sentencia sumaria, la parte que se opone a la concesión de la misma también deberá cumplir con ciertos requisitos preceptuados en la referida regla y deberá argumentar el derecho aplicable a la controversia, ya sea para que el pleito no sea resuelto por la vía sumaria, o para que se dicte sentencia sumaria a su favor.

Es decir, el hecho de que una parte solicite sentencia sumaria no implica que la misma debe ser resuelta a su favor. Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en derecho.[40]

El criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que sólo reste aplicar el Derecho.[41]

Es por ello que, una moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta hechos fundamentados que puedan mover a un juez a resolver a su favor.[42] Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.[43]

---

[39] *Id.*; *Pérez Vargas v. Office Depot / Office Max, Inc.,* 203 DPR 687, 698 (2019).
[40] *Rodríguez García v. UCA, supra,* pág. 941.
[41] *Id.*
[42] *Id.*
[43] *Id.*

Quiere decir que, en ausencia de una controversia de hechos materiales discernible, corresponderá a los tribunales aplicar el Derecho y resolver conforme al mismo.[44] En cambio, el TPI no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; y (4) como cuestión de derecho no procede.[45]

**-B-**

El Tribunal Supremo de Puerto Rico ha sido claro en que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[46]

La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[47]*

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[48]

Por lo tanto, para realizarla adecuadamente nuestro Alto Foro Judicial indica expresamente que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[49]

---

[44] *Rodríguez García v. UCA, supra.*
[45] *Vera v. Dr. Bravo*, 161 DPR 308, 333 – 334 (2004).
[46] *Coop. Seguros Múltiples de PR v. Lugo*, 136 DPR 203, 208 (1994).
[47] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[48] *Id.*
[49] *Id.*

**-C-**

El Código Civil de Puerto Rico (1930) es claro en materia de contratos.[50] Dicho cuerpo legal establece que *el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.*[51] El Código Civil de 1930 dispone que los contratos se perfeccionan por el mero consentimiento y desde entonces *obligan, no sólo al cumplimiento de lo expresamente pactado*, sino también a todas las consecuencias que según su naturaleza sean conforme *a la buena fe,* al uso y a la ley.[52]

Asimismo, la figura de la novación estaba codificada en el Código Civil (1930), y es una de las maneras en las que se extinguen las obligaciones,[53] aunque puede tener solamente el efecto de modificar la obligación sin extinguirla. Ahora bien, existe la novación *extintiva* y la novación *modificativa.* Referente a estas modalidades, nuestro Alto Foro Judicial, esbozó que:

> *La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. De otra parte, se concreta la novación modificativa de una obligación cuando no exista la intención de extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva.*[54]

Para poder determinar la delimitación entre la novación extintiva y la modificativa, se importante buscar el *animus novandi* o la voluntad de las partes al momento de alterar una obligación.[55] "*El animus novandi es un elemento indispensable al momento de estudiar la novación extintiva.*"[56] Según el Art. 1158 del Código Civil,

---

[50] Al presente caso le aplican las disposiciones legales del *Código Civil de Puerto Rico* (1930).
[51] Art. 1206 del Código Civil (1930), 31 LPRA ant. sec. 3371.
[52] Art. 1210 del Código Civil (1930), 31 LPRA ant. sec. 3375. *Énfasis suplido.*
[53] *Las obligaciones se extinguen: Por el pago o cumplimiento; por la pérdida de la cosa debida; Por la condonación de la deuda; Por la confusión de los derechos de acreedor y deudor; Por la compensación; Por la novación.* Art. 1110 del Código Civil (1930), 31 LPRA ant. sec. 3151.
[54] *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 725 (2008).
[55] *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 244 (2007).
[56] *PDCM Assoc. v. Najul Bez, supra,* a la pág. 726.

existe una presunción de novar cuando existe total incompatibilidad entre dos obligaciones.[57] Por lo que, al existir una incompatibilidad entre la obligación original y la nueva obligación, produce la extinción de la primera.[58]

Por otro lado, la novación modificativa no precisa el *animus novandi* para alterar una obligación.[59] Esta vertiente se configura cuando falta la voluntad expresa de las partes, o cuando existe es una compatibilidad entre las obligaciones pactadas.[60] Esta vertiente, exige hallar un ánimo de cambio, por lo que es necesario interpretar la voluntad de las partes y las circunstancias de cada caso.[61] Según nuestro Tribunal Supremo, ejemplos de novación modificativa son cuando se confieren prórrogas o plazos fraccionados, o cuando existe un cambio en la duración del término de un contrato.[62]

### -III-

En **primer orden**, al estar en la misma posición que el TPI, para atender una solicitud de sentencia sumaria, procedemos a resolverla. Antes, adoptamos por referencia las quince (15) determinaciones de hechos incontrovertidos enmendados que esbozó el foro primario en la *Sentencia Parcial Enmendada,* por entender que están sustentados por la prueba que se acompañó. Como foro apelativo, nos compete determinar si las partes cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil.[63] Un análisis de los documentos sometidos nos lleva a concluir que ambas partes cumplieron con todos los trámites procesales correspondientes a la solicitud de sentencia sumaria.

---

[57] 31 LPRA ant. sec. 3242.
[58] *Mun. de San Juan v. Prof. Research, supra,* en la págs. 244 - 245.
[59] *Id.*
[60] *PDCM Assoc. v. Najul Bez, supra,* a la pág. 726.
[61] *Id.*
[62] *Id.*
[63] 32 LPRA Ap. V, R. 36.

Tanto la parte apelante como la parte apelada cumplieron con enumerar los hechos esenciales y pertinentes, y sostener sus alegaciones con prueba admisible en evidencia. Además, cada parte refutó las alegaciones de la parte contraria, en sus respectivos escritos.

En **<u>segundo orden</u>**, el recurso epígrafe señala la comisión de cuatro (4) errores por parte del TPI, que discutiremos en conjunto por estar estrechamente relacionados. La parte apelante plantea que las determinaciones de hechos no controvertidos realizados por el TPI se basaron en dos (2) contratos que no fueron suscritos por las partes. No obstante, al examinar dichos contratos y las acciones de ambas partes notamos que no tiene razón.

Como bien determinó el TPI, el Contrato de Cesión suscrito el 7 de diciembre de 2017, creó una promesa bilateral de compraventa. En específico, en la cláusula sexta se expresó:

> *SEXTA: Durante los seis meses siguientes a este contrato, el Cesionario hará esfuerzos continuos y razonables para que no más tarde del 31 de julio de 2018, **se logre perfeccionar la compraventa** del inmueble y quede de esa forma liberado el Concedente de sus obligaciones como deudor hipotecario del inmueble. Si alcanzada la fecha del 31 de julio de 2018 aun la compraventa no ha quedado completada por otras razones que no sean atribuibles a la perfección del título que le corresponde realizar al Cesionista para hacer viable la transmisión del indicado título, el Cesionario asume la total obligación de pagar el importe de la mensualidad hipotecaria al BPPR hasta su fecha de vencimiento, la que incluye principal, interés, recargos, penalidades, seguros y contribución territorial, y además, pagará el importe total de la cuota y derramas impuestas por la asociación de residentes de Laderas de San Juan, cuya realización de pagos validará el Cesionario haberlos hecho al Cesionista. [sic].*

Este acuerdo fue modificado cuando ambas partes pactaron vender el inmueble a un tercero y dividir en partes iguales el producto de la compraventa. En lo pertinente, las determinaciones de hechos incontrovertidas # 8 y #14 establecen:

*8. El 22 de enero de 2022, De La Cruz y Bermúdez Segarra*

> *firmaron un documento titulado Acuerdo de distribución de fondos. En este, ambos acordaron dividir en partes iguales el producto neto que resultara de la venta de la residencia ubicada en la Urb. Laderas de San Juan.*
>
> *[. . . .]*
>
> *14. El 26 de febrero de 2022 Bermúdez Segarra por sí y sus hijos suscribieron un contrato titulado Contrato de opción de compra con Rafel Torres y Kennida Margarita Fernández. Este contrato establecía $700,000.00 como precio de venta de la residencia ubicada en la Urb. Laderas de San Juan y que es Propiedad de Bermúdez Segarra y de sus hijos. [. . . .].*

Pese a que, la parte apelante señala que las determinaciones de hecho #8 y #14 no son correctas, lo cierto es que dicha parte no ha provisto evidencia alguna que refute esos hechos. Nótese, que en un principio ambas partes tenían un primer acuerdo de cesión de uso y aprovechamiento del inmueble en el cual el Lcdo. De La Cruz iba a comprar el inmueble, sin embargo, dicho acuerdo quedó sin efecto cuando ambas partes acordaron conseguir una tercera persona que comprara la propiedad y dividir las ganancias entre el Dr. Bermúdez Segarra y el Lcdo. De La Cruz en partes iguales. No cabe duda, que ese segundo acuerdo cambió las obligaciones pactadas en el primer acuerdo. Razón por la cual, efectivamente el primer contrato quedó invalidado por ser incompatible con el segundo. Nada en el expediente demuestra el TPI haya actuado pasión, prejuicio y parcialidad. Los errores señalados no se cometieron.

En virtud de lo anterior, ante la ausencia de prueba de que el TPI actuara con prejuicio, parcialidad o error manifiesto, no intervendremos con la sentencia recurrida, ni con la deferencia que a esos efectos se le debe al foro recurrido.

**-IV-**

Por los fundamentos antes expuesto, **confirmamos** el *Sentencia Parcial Enmendada* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
